## H. H. Rowland & Bro. v. State.

1. Occupation Tax — Case Stated.— Under article 4665, Revised Statutes, the defendants took out a license to sell liquors in quantities of one quart and less than five gallons, paying the prescribed fee of $150. On March 11, 1881, and prior to the expiration of the twelve months for which they paid, the Legislature increased the occupation tax to $200, and the defendants continued to sell under their license, refusing to pay the additional tax or take out a license under the new tax law. *Held*, that the Legislature had the power, by general law, to revoke a license to sell liquors for which an antecedent tax had been received by the State.

2. Same — Statute Construed.— The act of March 11, 1881, expressly repeals article 4665 of the Revised Statutes, and while section 3 of the repealing act contains a saving clause, such saving clause does not apply to licenses to sell liquor in quantities of one quart and not more than five gallons.

Appeal from the County Court of Smith. Tried below before the Hon. C. G. White, County Judge.

The opinion discloses the case. Two hundred dollars and costs was the fine imposed

No brief for appellants.

*H. Chilton*, Assistant Attorney General, for the State.

Willson, J.   Art. 4665, Revised Statutes, fixed the State occupation tax upon selling liquors in quantities of one quart and less than five gallons, at $150. The defendants, in October, 1880, paid this tax, and took out a license to pursue such occupation for the period of one year from that date. On the 11th of March, 1881, the Legislature increased this occupation tax to $200. (Gen'l Laws 17th Leg. chap. 31, p. 21.) After the enactment of this law, defendants continued to sell liquor under their license, refusing to pay the additional tax and take out a license under the new statute. They were prosecuted and convicted under art. 110, Penal Code, for pursuing the occu-

pation of selling liquor without first obtaining a license therefor.

The questions presented are, 1. Did their license, obtained under the previous law, protect them from the operation of the new law, during the period of time covered by their license? In other words, having paid for and obtained a license to sell liquor for the period of twelve months, could the Legislature, by imposing an additional tax upon their occupation, destroy the vitality of their license? Could the Legislature revoke or repeal this license? 2. If it had such authority, did it in fact exercise it? While there exists some conflict of authorities upon the question as to the right or power of the Legislature, by a general law, to revoke a license to sell liquors, for which a fee has been received by the State, we think the weight of authority is in support of such right or power. *Breck Presbyterian Church* v. *Mayor*, 5 Cow. 538; *Hirn* v. *State*, 1 Ohio, N. S. 15; *Calder* v. *Kurby*, 5 Gray, 597; *Bummer* v. *Boston*, 102 Mass. 19; *State* v. *Stirling*, 8 Mo. 697; *Vanderbilt* v. *Adams*, 7 Cow. 349; *Board of Excise* v. *Barry*, 34 N. Y. 657; *Phelan* v. *Virginia*, 3 How. 162; *Freleigh* v. *State*, 8 Mo. 606; *State* v. *Sterling*, 8 Mo. 697; *Baltimore* v. *Clunet*, 23 Md. 449; *Fell* v. *State*, 42 Md. 71; *Com.* v. *Brennan*, 103 Mass. 70.

In the case before us, did the Legislature exercise this right or power, and revoke the license under which defendants were selling liquor? We think so. The act increasing the tax expressly repeals the law under which the license was issued, and while section 3 of this repealing act contains a saving clause in favor of a certain class of liquor dealers therein specified, this saving clause does not relate or apply to the liquor dealers having license to sell in quantities of one quart and not more than five gallons. We think, therefore, that the effect of the act of March 11, 1881, was to revoke the license of the defendants, and that such license was no longer a protection

to them after that act took effect.    We are of the opinion
that the judgment of conviction is correct, and it is
accordingly affirmed.

*Affirmed.*

HURT, J., does not concur.