CITY OF LOWELL *vs.* AMEDEE ARCHAMBAULT.

Middlesex.    March 28, 1905. — September 8, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*License.    Stable.    Board of Health.*

A license to erect and use a stable granted by the board of health of a city under St. 1895, c. 213, now R. L. c. 102, § 69, without limit of time, where there has been no violation of its terms is not revocable by that board.

BRALEY, J.    This is a bill in equity brought under the R. L. c. 102, § 71, to enjoin the defendant from occupying and using a stable in violation of the provisions of § 69 of the same chapter. In the Superior Court the case was submitted on agreed facts, and a decree was entered in favor of the plaintiff. The case comes before us on an appeal by the defendant.

It appears that the defendant, who is engaged in the business of an undertaker, desiring to erect on his land a stable to be used in connection therewith, applied to the board of health for

---

a license to permit him to occupy and use the building when completed, for the stabling of eight horses. This petition was granted, and on July 11, 1899, a license was issued to him permitting the exercise of this privilege. Upon receiving it he at once had plans prepared, and began the erection of a stable on a site from which he at a pecuniary loss had removed another building. After the work had been begun, but before its completion, the board of health, acting on the petition of residents in the immediate vicinity, rescinded their former vote and cancelled the license. Since the completion of the building the defendant has used it for the keeping of two horses, claiming this right under the license, which he contends never has been legally annulled. If the revocation was invalid, such use was not in violation of the statutory provisions on which the plaintiff relies, and the bill cannot be maintained.

The license granted under the police power of the Commonwealth, as administered through the agency of the board of health, did not constitute a contract between him and the city, or confer any vested right of property. Neither did its abrogation, if lawful, deprive him of any immunity, or privilege conferred by our Constitution. *Calder* v. *Kurby*, 5 Gray, 597. *Newton* v. *Joyce*, 166 Mass. 83. *Young* v. *Blaisdell*, 138 Mass. 344.

The St. of 1895, c. 213, now R. L. c. 102, §§ 69, 71, under the authority of which the board acted and the license was issued, contained no provisions for its recall when once granted. It evidently was the purpose of § 1 of the original act that the license itself should specify the extent of the right by setting out the conditions under which the building could be built and used; for by § 2 the board may make regulations respecting the occupation and use of stables in existence at the date of its passage, while the last section provided a penalty for the violation of the act itself, or of any order or regulation made pursuant to its requirements.

Whether a stable was in existence and its use was to be continued, or permission was to be given to erect a stable and then use it, the right in each instance was subject to such reasonable regulations as might be made by the board of health.

It undoubtedly was presumed that the board would make proper inquiries before judicially determining whether a license

should or should not be refused, and if granted, to prescribe by its terms how far the privilege might be exercised. In any instance, if the granting of a license would be detrimental to the public health or contrary to regulations already established, then it would not be issued.

If the statute had given to the boards of health of cities a general authority similar to that conferred by Pub. Sts. c. 80, § 10, it might be that they lawfully could make the violation of their regulations a sufficient ground for revoking the privilege and could issue it upon such a condition. *Young* v. *Blaisdell, ubi supra. Grand Rapids* v. *Braudy,* 105 Mich. 670, 677, 678.

At least it could be said that the licensee then would take it subject to this reservation, and having agreed to its terms no injustice would be done by a subsequent cancellation.

Generally under statutes regulating the conduct of certain kinds of employment, or of business, which require the protection of a license before they can be lawfully prosecuted, the penalty of forfeiture is dealt with either by conferring express authority to revoke for violations upon the licensing board or some other tribunal, or else a general power is delegated under which such a clause may be inserted in the license itself. R. L. c. 100, §§ 15, 47, 89; c. 102, §§ 9, 28, 29, 33, 58, 72. *Grand Rapids* v. *Braudy, ubi supra.*

Upon application for permission to erect a stable, which in the absence of a restricting statute would be a legitimate improvement in the enjoyment of his property, the applicant is entitled to know the full measure of immunity that can be granted to him before making the expenditure of money required to carry out his purpose. A resort to the general laws relating to the subject, or to ordinances or regulations made pursuant to them, should furnish him with the required information. When this has been obtained he has a right to infer that he can act safely with the assurance that, so long as he complies with the requirements under which it is proposed to grant the privilege, he has a constitutional claim to protection until the Legislature further restricts or entirely abolishes the right bestowed. *Commonwealth* v. *Brennan,* 103 Mass. 70. *Commonwealth* v. *Kinsley,* 133 Mass. 578, 579. *Hirn* v. *State,* 1 Ohio St. 15, 20, 21. *Schwuchow* v. *Chicago,* 68 Ill. 444. *Lantz* v.

*Hightstown,* 17 Vroom, 102, 107.   *Grand Rapids* v. *Braudy,* *ubi supra.*

Independently of this statute, while the board of health, under Pub. Sts. c. 80, §§ 8, 12, after a hearing and on proper evidence, might have adjudged the defendant's building, when erected and occupied as a stable, detrimental to the public health and therefore a nuisance, it had no jurisdiction to issue a license to him permitting and regulating such use except as authorized. *Commonwealth* v. *Stodder,* 2 Cush. 562. *Cambridge* v. *Munroe,* 126 Mass. 496, 502. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 382.

It is the Legislature alone that primarily can impose or give authority to impose conditions and exact forfeitures. *Lantz* v. *Hightstown, ubi supra.* Dillon, Mun. Corp. (3d ed.) § 345, note 4, and cases cited. And the authority of the board as a governmental agent is commensurate with the provisions of the statute clothing it with this power. *Abbott* v. *Frost,* 185 Mass. 398, 400.

A licensee should not be subjected to the uncertainties that constantly would arise if unauthorized limitations of which he can have no knowledge are subsequently and without notice to be read into his license at the pleasure of the licensing board.

Besides, all reasonable police regulations, enacted for the preservation of the public health or morality, where a penalty is provided for their violation, while they may limit or prevent the use or enjoyment ʻof property except under certain restrictions, and are constitutional, create statutory misdemeanors which are not to be extended by implication. *Commonwealth* v. *Beck,* 187 Mass. 15.

The license issued to the defendant contained no limit of time for its exercise, nor was it made subject to an existing regulation which so provided. It stated that permission was given to keep eight horses, and purported to and did set out in full the statute under which it was granted, but contained no further recitals. Thus neither by its terms nor by the statute itself was it made revocable, nor does it appear that any regulations had been adopted or promulgated the violation of which would cause a forfeiture.

Originally it may have been issued improvidently. But upon being informed that citizens in the vicinity of the defendant's

premises objected to the erection of the building for its proposed use, it was not within the power of the board of health, even after a hearing, in the absence of authority derived from legislative sanction, to deprive the defendant of the privilege they had granted unreservedly. *Commonwealth* v. *Moylan,* 119 Mass. 109, 111. *Commonwealth* v. *Kinsley,* 133 Mass. 578. *Mayor of New York* v. *Third Avenue Railroad,* 33 N. Y. 42. *Shuman* v. *Fort Wayne,* 127 Ind. 109. *Hirn* v. *State,* 1 Ohio St. 15. *Grand Rapids* v. *Braudy,* 105 Mich. 670. *Lantz* v. *Hightstown,* 17 Vroom, 102.

In the opinion of a majority of the court the decree must be reversed and a decree entered dismissing the bill with costs.

*So ordered.*

The case was argued at the bar in March, 1905, before *Knowlton,* C. J., *Morton, Lathrop, Hammond,* & *Braley,* JJ., and afterwards was submitted on briefs to all the justices.

*F. W. Qua,* for the defendant.

*J. G. Hill,* for the plaintiff.